## STATE EX REL. AMERICAN INDEMNITY COMPANY v. GARFIELD W. BROWN AND OTHERS.[1]

August 11, 1933.

No. 29,293.

[1]Reported in 250 N. W. 2.

*Gillette & Meagher,* for appellant.

At the hearing on the demurrer respondents appeared by *Henry N. Benson,* former Attorney General, and *John F. Bonner,* former Assistant Attorney General.

At the hearing on appeal to this court there was a brief filed and an appearance on behalf of respondents by *Harry H. Peterson,* Attorney General, and *Roger S. Rutchick,* Assistant Attorney General.

*LORING, Justice.*

This was an appeal from an order sustaining a demurrer to a writ of mandamus directed to the commerce commission of this state on the relation of the American Indemnity Company, an insurance corporation organized under the laws of the state of Texas. The relator is licensed to do business in some 26 states other than that of its organization. It has a capital stock of $1,000,000 and a net surplus of $400,000, and claims total assets of over $3,000,000. It was licensed to do business in the state of Minnesota for many years prior to 1932. Sometime during the year 1931 it absorbed the American Fire & Marine Insurance Company, which writes fire and tornado insurance in the states of Louisiana and Texas. The relator has amended its charter and now conducts the business of writing such insurance in those two states at a profit. Prior to its absorption of the American Fire & Marine Insurance Company this relator was engaged in writing automobile liability and property damage insurance as well as fidelity insurance in this state. The question presented here is whether under the laws of this state a company writing fire and tornado insurance elsewhere than in this state may be licensed to conduct a fidelity business here.

2 Mason Minn. St. 1927, § 7442, authorizes the organization of corporations in this state for the purpose of carrying on any one

branch of the business of insurance authorized by law or any two or more branches thereof which are permitted by law to be transacted by one company.

1 Mason Minn. St. 1927, § 3315, classifies insurance which may be written into 15 subdivisions, and provides that a corporation having a paid-up capital stock of not less than $200,000 and a surplus of not less than $50,000, constantly maintained, may, when authorized by its articles of incorporation, transact any or all of the kinds of business specified in subds. 1 to 15, inclusive, excepting those specified in subds. 1, 2, 4, 6, 15. The relator does not seek to transact a fire or tornado insurance business in this state under subd. 1 of § 3315, but does apply for the privilege of doing fidelity insurance business under subd. 6 of that section. It will therefore be seen that its articles of incorporation authorize it to conduct a combination of fire and fidelity insurance business, not allowed to a Minnesota corporation, although it does not seek to do such a combination of business in this state.

1 Mason Minn. St. 1927, § 3711, authorizes the admission of any foreign insurance company to do business in this state upon the furnishing of satisfactory evidence of its legal organization and authority to transact the proposed business, and that its capital, assets, deposits with the proper official of its own state, amount insured, number of risks, reserve, and other securities and guaranties for the protection of its policyholders, creditors, and the public comply with those required of like domestic companies.

The question then resolves itself into whether the prohibition against the conduct of the combination of fire and fidelity insurance is a provision or guarantee for the protection of policyholders, creditors, and the public within the meaning of § 3711. The commerce commission has answered that question in the affirmative and denied the relator's application. The lower court has sustained the commission. It is quite clear that no domestic company could be organized to do a fire and fidelity insurance business without the boundaries of the state of Minnesota although confining its business within the state to one or the other of those classes.

In our opinion the provision prohibiting the two kinds of insurance here involved was made for the protection of the public and of the policyholders making contracts with the insurance company, and the severance of these two kinds of insurance is one of the guaranties for protection of policyholders, creditors, and the public. The legislative provision is a declaration of public policy to that effect. To allow a foreign corporation, whose articles authorize it to conduct both classes of insurance, to do business in this state would be licensing a foreign corporation which does not comply with the provisions for the protection of the policyholders, creditors, and public which are required of like domestic companies. The fact that the relator does not propose to do a fire insurance business in this state is not material. The question is not one of geography but of the safe conduct of business. It would be an equal menace to policyholders and the public in this state for the relator to conduct a fire insurance business elsewhere as for it to conduct such a business in this state along with its fidelity insurance. We so interpret the legislative intent. If what a foreign corporation does outside the state constitutes a hazard to the people of this state, the legislature is within its constitutional rights in denying it admission to this state. We see no violation of the federal constitution in such a course.

The relator relies largely upon the case of Allin v. American Ind. Co. 246 Ky. 396, 55 S. W. (2d) 44, wherein it was held that this relator might and should be licensed to do business in the state of Kentucky notwithstanding its articles of incorporation authorized it to do business without that state in combinations not permitted in Kentucky. It sought only to do such business in Kentucky as was permitted to a Kentucky corporation and did not seek to conduct its fire insurance business there. The court held that the Kentucky constitution, properly interpreted, applied only to the transaction of business in Kentucky upon the same conditions given to domestic corporations. We cannot apply that reasoning to the case at bar. Our legislature has definitely declared the policy of the state not to authorize Minnesota corporations to do what the relator seeks to do,

although it authorized our domestic corporations to do business in any state or territory in the United States, the Dominion of Canada, or in foreign countries when it is so specified in their charters. This declaration of public policy as to the conduct of business is too obviously for the protection of the people of the state to be ignored by us.

The order of the trial court sustaining the demurrer to the writ is affirmed.